# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

QUINTON MURPHY,

          Plaintiff,

v.                                       Case No. 19-CV-1728

UNITED PARCEL SERVICE, INC.,

          Defendant.

# ORDER

Quinton Murphy is deaf, and he has sued UPS to be allowed to be trained as a driver. On August 23, 2022, Chief Judge Pamela Pepper referred the case to this court for pretrial processing, in particular a then-pending motion to compel filed by Murphy. (ECF Nos. 77 and 88.) At the conclusion of the hearing at which the court resolved that motion, Murphy raised yet another dispute the parties were having, this one relating to plaintiff's request to observe and record a driver training session. The court directed Murphy to file a motion on that issue. This order resolves that motion to compel. (ECF No. 93.)

On March 10, 2022, Murphy made the following requests of UPS under Fed. R. Civ. P. 34:

> 1. Permit Plaintiff's counsel and an appointed videographer entry onto its property located at located at 12400 W Bluemound Rd., Elm Grove, Wisconsin, 53122, or another similar location mutually agreed to by the parties, to observe the fourth and fifth day of the five- day driver orientation training so that Plaintiff may inspect, survey, photograph, and/or record, via video recording, the on road training of a driver candidate for the duration of the full business day on April 14 and 15, 2022. Plaintiff asks that Defendant arrange for and appoint a driver candidate, a corporate trainer, and fully cooperate with demonstrating the last two days of the on-road driver orientation training, and that the training be conducted in a "safety car" with a second row for which Plaintiff's counsel and the videographer may ride along to observe.
>
> 2. Permit Plaintiff's counsel and an appointed videographer entry onto its property located at 12400 W Bluemound Rd., Elm Grove, Wisconsin, 53122, or another similar location mutually agreed to by the parties, to observe the on-road first and second day of a 30-day driver probationary period of a driver candidate so that Plaintiff may inspect, survey, photograph, and/or record, via video recording, the on-road training of a driver candidate for the duration of two full and complete shifts of the driver candidate on April 11 and 12, 2022. Plaintiff asks that Defendant arrange for and appoint a driver candidate, an on-road supervisor, and fully cooperate with demonstrating the first two days of the on-road training, and that the training be conducted in a "safety car" with a second row for which Plaintiff's counsel and the videographer may ride along to observe.

(ECF No. 94-1 at 3-4.)

On April 11, 2022, UPS objected to Murphy's request. (ECF No. 94-4.) That led to the parties attempting to work out a compromise. (ECF No. 94-5.) UPS objected to the involvement of an actual trainee but offered to create a video of a simulated training, with a supervisor playing the part of a trainee. (ECF No. 94-5 at 2.) Murphy's position was that he needed video of whatever training UPS alleged it could not accommodate in light of Murphy's disability. (ECF No. 94-5 at 2.) Therefore, Murphy proposed UPS

record the training of an actual candidate, reducing the number of days that it wanted recorded from four to two. (ECF No. 94-5 at 2.) Murphy did not want just video of what happened in the truck; he also wanted the recording to include the trainee's interactions with customers. (ECF No. 94-5 at 2.) UPS responded that it could not authorize recording on the property of third parties. (ECF No. 94-5 at 2.)

On April 26, 2022, UPS reiterated its position that it did not regard Murphy's request to video record driver training as reasonable but agreed to provide a pre-existing video in which a UPS facilitator demonstrates on-road training. (ECF No. 94-6.) UPS provided that video a couple of days later. (ECF No. 94-7.) Murphy responded by noting that the video was only nine minutes long and did not show any interaction with customers. Plaintiff's counsel stated:

> We are really looking for a "day in the life" experience. We'd like to have a full day of recording on the truck in training (i.e. similar to what you have given us but longer) and we simply must have some information about interactions throughout the day given that UPS is claiming that is something that can't be accommodated. To that end, we would propose that a driver be equipped with a body camera on an agreed upon date – we would agree that any customer or client information can be blurred, as well as faces.

(ECF No. 94-8 at 1.)

On May 11, 2022, UPS rejected Murphy's proposal of having an actual driver trainee wear a body camera. (ECF No. 94-10 at 1.) It regarded the request as beyond the scope of Rule 34 and reiterated that it cannot consent on behalf of third parties to permit video recording on their premises. (ECF No. 94-10 at 2.) UPS also asserted that

recording of customer interactions was not relevant because UPS's assertion that it could not accommodate Murphy's disability "is primarily based on the fact that hearing and speaking are required by the Federal Motor Carrier Safety Regulations for operators of Commercial Motor Vehicles …." (ECF No. 94-10 at 2.)

On May 24, 2022, Murphy noted that recent deposition testimony referred to communications that occur during the on-the-road portion of training that UPS claimed would not be accessible to a driver with a hearing exemption. (ECF No. 94-12 at 1.) Plaintiff's counsel stated, "We will need an unedited video recording of the training that UPS purports to be inaccessible." (ECF No. 94-12 at 1.)

The parties met and conferred again on May 26, 2022, with Murphy stating he "would be willing to reduce the Rule 34 examination to the 1-day of Integrad training (day 3 or 4—whichever has the longest and most on-road training) and the first or second day of the training at Elm Grove (whichever day UPS represents to have more time for on the road training)." (ECF No. 94-13 at 1.) Murphy reiterated that he was interested in "that portion of the on-road training that UPS represents cannot be accommodated with a sign language interpreter and the part of the training that would be on an actual road (not 'Tiny Town')." (ECF No. 94-13 at 1.) Murphy "proposed a dash cam or camera set up behind the driver candidate and trainer." (ECF No. 94-13 at 1.) He stated he was willing to forego having his representative sit in the vehicle "so

long as you agree not to edit or turn off the camera during the day." (ECF No. 94-13 at 1.)

UPS responded on June 1, 2022, "We are able to offer recording of the full on-road portion of a day at Integrad. To avoid interfering with the training of an actual driver candidate, and to facilitate scheduling the recording, the role of the trainee will be played by a facilitator rather than an actual driver candidate." (ECF No. 94-15 at 1.)

Murphy replied that he needed a recording of the on-road instruction of the first or second day training at either the Elm Grove or Oak Creek facilities. Murphy stated he "will not agree to a recording or [sic] a facilitator training another facilitator" and referred to this as his "best and final offer for the Rule 34 examination." (ECF No. 94-16 at 1.) He rejected UPS's contention that having a camera in a vehicle would be a disruption or interference. (ECF No. 94-16 at 1.)

UPS rejected Murphy's proposal on June 3, 2022. (ECF No. 94-17 at 1.) It asserted that the testimony of on-road supervisors, which had already been produced to Murphy, was more probative than the video recording of a single candidate on a single day. (ECF No. 94-17 at 1.) UPS reiterated its offer to provide a recording of a full day of training at Integrad with a supervisor acting as a trainee. (ECF No. 94-17 at 1.)

The parties proceeded with depositions of expert witnesses. At the depositions of Murphy's experts each was asked similar questions that they said they could not answer because they were not allowed to visit a UPS training site. At the August 12,

2022, deposition of one of UPS's expert witnesses, John Pinckney, Murphy learned that on March 15, 2022, Pinckney toured UPS's Integrad site's training circuit, nicknamed "Tiny Town." Active training of an actual driver trainee was underway, which Pinckney was able to observe from a "safe distance away from the vehicle." (ECF No. 96 at 12.) Pinckney was able to hear and see the supervisor and his interaction with the driver trainee. (ECF No. 96 at 12.)

After the depositions, on September 8, 2022, Murphy renewed his "offer to compromise on our Rule 34 onsite visit." (ECF No. 94-27.) He still sought a "passive camera of a driver candidate[.]" (ECF No. 94-27.) UPS responded that fact discovery had closed and "[t]here is no justification for delay here." (ECF No. 94-28.) It stated:

> That UPS's expert testified about making a visit to Integrad does not excuse the delay; Plaintiff already knew that such a visit could have been probative, yet chose not to pursue it before the close of fact discovery. Had Plaintiff made a timely request to permit his expert to simply visit the site to observe (as UPS's expert did), UPS would have agreed. Instead, Plaintiff insisted on a burdensome video-recording that was (a) far beyond anything UPS's expert did and (b) rendered pointless by the videos of driver training UPS produced in discovery.

(ECF No. 94-28.)

Murphy filed this motion to compel on September 12, 2022. (ECF No. 93.) In his brief submitted in support of his motion he asks that the court "grant Plaintiff permission to observe and video record one eight-hour day of the first day of an actual driver candidate training at the Elm Grove facility in Elm Grove, Wisconsin." (ECF No. 95 at 2.) Alternatively, he asks the court "grant Plaintiff and Plaintiff's expert the same

access and observation that Defendant granted its own experts to inspect the Integrad facility, its interactive technology and to observe an actual driver candidate in Tiny Town." As a second alternative, he asks that the court "order the testimony of Defendant's expert regarding his observations and knowledge of UPS's driver training be stricken from the record as prejudicial toward Plaintiff's expert's testimony." (ECF No. 95 at 3.)

UPS opposes Murphy's motion. (ECF No. 96.) It argues that the motion is untimely and will result in Murphy's experts having to supplement their reports, which would require UPS's rebuttal experts to supplement their reports, followed by additional depositions of the experts on the revisions. (ECF No. 96 at 18-19.) It further argues that Murphy's request is cumulative and disproportionate. (ECF No. 96 at 19.) Murphy can, and has, obtained the necessary information from three training videos that UPS provided and from the depositions of a corporate representative and others with knowledge of the training. (ECF No. 96 at 20-21.) It also contends that Murphy's request is unduly burdensome in that it would impinge on the privacy interests of the third-party candidate chosen to be videotaped. It would also create unacceptable safety risks by altering the training environment for a candidate who is still learning to safely operate a vehicle. (ECF No. 96 at 21-22.)

As for Murphy's proposal to allow his expert to view training in the same manner as UPS's expert, UPS notes that Murphy never made this request of UPS. In fact,

Murphy expressly rejected any proposal to visit the Integrad "Tiny Town" closed course. (ECF No. 96 at 22.) Having never made such a request, Murphy failed to comply with his obligation to meet and confer regarding any such request. (ECF No. 96 at 24-25.)

Murphy asserts in reply that his motion is timely because it is based on new evidence that came to light after fact discovery closed—specifically, learning that UPS's expert was allowed to observe an actual driver training candidate at Integrad. (ECF No. 102 at 3.) And, in any event, UPS is not prejudiced (ECF No. 102 at 6-8), while Murphy would be substantially prejudiced without the discovery (ECF No. 102 at 8-10).

The court held a hearing to discuss Murphy's motion. The court sought to understand the facts underlying Murphy's motion so as to be able to resolve it on the merits. And the court attempted to determine if there was an acceptable middle-ground. But the parties were unable to reach an agreement. Therefore, the court turns to the merits of Murphy's motion.

Murphy's motion is untimely, coming more than two months after the deadline for fact discovery. (ECF No. 75.) The disclosure that UPS's expert was able to passively observe a portion of the training at Integrad does not excuse Murphy's untimeliness. The meet-and-confer process ended on June 3, 2022, when UPS rejected Murphy's "best and final offer" to record the full first or second day training at either the Elm Grove or Oak Creek facilities. Although Murphy now requests allowing its expert to view

training at Integrad as an alternative, Murphy never made this request in accordance with Rule 34 and the request was never subject to the meet and confer process.

However, balancing the potential prejudice to each party, the likely prejudice to Murphy in not being able to adequately address UPS's defense substantially outweighs the potential prejudice to UPS. Although reports and depositions may need to be supplemented, the scope of that supplementation ought to be minimal. Any supplementation would not materially delay the resolution of this action. Therefore, the court excuses Murphy's untimeliness.

Turning to the merits of Murphy's request, the court would be inclined to agree with UPS that recording or viewing any training is disproportionate to the needs of the case, and deposition testimony and UPS's training videos would be sufficient. However, as stated above, in the depositions of Murphy's experts UPS seemed to attempt to undermine them by underscoring that they did not view any training of actual driver candidates. (ECF No. 95 at 9-11.) In light of the fact that UPS had its expert observe an actual driver candidate receiving live training, and the implication that the failure of Murphy's experts to do the same undermines their opinions, the court will accept that having the opportunity to observe an actual driver candidate in training is relevant and proportional to the needs of the case.

However, Murphy's request to be allowed to video record an entire day of an actual candidate's training would be unreasonably disruptive and unfair to the selected

candidate. Although the parties refer to the program as "training," it was made clear in the court's discussions with the parties that UPS is also evaluating the candidate to assess whether he is qualified to work as a driver. Telling a candidate that his training will be recorded could exacerbate what is already a stressful situation for him. Regardless of whether UPS would lead him to believe that recording was standard practice or expressly informed him that the recording is not for purposes of scrutinizing his performance but for purposes of documenting the nature of the training, the candidate would be disadvantaged by being subject to additional stresses. This would be unfair to the candidate, who has no relationship to this lawsuit. Simply placing a camera in the truck without telling the candidate it was recording, as proposed by Murphy, likely would not be consistent with state privacy laws or UPS policies. Therefore, the court will deny this aspect of Murphy's motion to compel.

In its conference with the parties, the court discussed UPS's offer to record a full day of training, albeit with a trainer in the role of a candidate. Murphy expressly rejected that offer. Therefore, the court does not consider it.

The court turns to Murphy's alternative request that his expert be permitted "the same access and observation that Defendant granted its own experts to inspect the Integrad facility, its interactive technology and to observe an actual driver candidate in Tiny Town." (ECF No. 95 at 2.) As noted, this request was never subject to the meet-and-confer process. While this is troubling, UPS did not disclose during the meet and confer

process that its expert was permitted to view training. Granted, in light of Murphy's refusal to view training at Integrad and his insistence on video recording, UPS's failure to offer comparable access as a compromise is somewhat understandable. Given these circumstances, and for the sake of expediency, the court overlooks Murphy's failure to meet and confer with UPS regarding this proposal.

Permitting an expert to passively observe training would be minimally disruptive, either to UPS's operations or the candidate. Obviously, UPS did not believe the presence of its expert would disrupt the training. For the same reasons, the court finds the request both proportional and relevant.

Therefore, the court will grant Murphy's alternative request. An expert witness designated by Murphy is permitted to attend up to a single day of training at the Integrad site. The expert will not be permitted to audio or video record. He or she will be afforded the opportunity to view the training from a perspective comparable to that which UPS's expert was afforded and will be able to hear any oral communication from the trainer or supervisor to the driver trainee. The expert is not to interact with any trainee.

The court underscores that the expert designated by Murphy is not to interview UPS employees regarding training; those are matters for depositions. Because this training will occur at a UPS facility, the court does not find that it can prohibit which UPS employees or agents, including defense counsel, attend the training. However, the

court is permitting only a single plaintiff designee to attend the training. If that designee is the plaintiff's expert, plaintiff's counsel is not permitted to attend. The presence of plaintiff's counsel in addition to a designee is unnecessary and more likely to be disruptive to UPS's operations and the trainee.

Having granted Murphy's motion, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). However, "the court must not order this payment if … the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(5)(i). As noted, Murphy filed the motion without first discussing its alternative request with UPS. Therefore, Murphy is not entitled to his expenses.

**IT IS THEREFORE ORDERED** that "Plaintiff's FRCP 37 Motion to Compel Discovery" (ECF No. 93) is **granted** with respect to Murphy's first alternative request for relief, as set forth above. It is denied in all other respects.

Dated at Milwaukee, Wisconsin this 27th day of October, 2022.

_WILLIAM E. DUFFIN_
WILLIAM E. DUFFIN
U.S. Magistrate Judge